UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GORDON SCOTT DITTMER,

    Plaintiff,

v.

CORIZON HEALTH, INC.,
*et al.*,

    Defendants.
_____/

Case No. 1:22-cv-77

Hon. Robert J. Jonker

**REPORT AND RECOMMENDATION**

This is a *pro se* civil rights action brought by Gordon Scott Dittmer (referred to as "plaintiff" or "Dittmer"), a prisoner in the custody of the Michigan Department of Corrections (MDOC). After initial screening, two defendants remain in this lawsuit, Corizon Health, Inc. ("Corizon"), and Keith Papendick, M.D. *See* Opinion and Order (ECF Nos. 9 and 10); Amended Complaint (ECF No. 24). This matter is now before the Court on defendants' motion for summary judgment on the basis of exhaustion (ECF No. 25).

    **I.**    **Dittmer's claim**

The gist of Dittmer's lawsuit is that defendants denied three requests for cataract surgery made on: August 24, 2018; October 12, 2018; and February 8, 2019. Amend. Compl. at PageID.149-150. Dittmer alleged that defendants Dr. Papendick and Corizon violated his Eighth Amendment rights because they were deliberately indifferent to his serous medical needs by denying and delaying the surgical removal of the cataract in his right eye as prescribed by three consulting doctors or specialists. *Id*. at PageID.156-157. Dittmer also alleged that defendants' actions violated his Eighth Amendment rights because denying the surgery was cruel and unusual

1

punishment, *i.e.*, they failed to protect Dittmer from the elevated risk of losing vision in his right eye. *Id*. at PageID.157-158. For his relief, Dittmer wants declaratory, compensatory, and injunctive relief. *Id*. at PageID.158-160.

> With respect to exhaustion of these claims, Dittmer alleged that
>
> On or about June 21, 2019, Plaintiff did file a Step I Prisoner Grievance against Heidi Washington, Director of the MDOC, et al, which did, by necessity, include Corizon, the MDOC's contracted Health Care Provider, for their lack of medical care with, and deliberate indifference to, Plaintiff's serious medical need, and did appeal to Steps II and III.

*Id*. at PageID.151. This is grievance LCF-19-06-616-12D1 ("616") (ECF No. 25-1, PageID.202-207). Dittmer also alleged that on or about October 22, 2020, he filed another grievance against Dr. Papendick for deliberate indifference to his serious medical needs and appealed this grievance through Steps II and III. *Id*. This is grievance LCF 20-10-1014-28E ("1014") (ECF No. 25-1, PageID.190-195). Finally, Dittmer alleged that on or about December 15, 2020, he filed another grievance against Dr. Papendick, as well as former defendants Kangas, Thompson, McQueen, Pandya, and Stieve, for deliberate indifference to his serious medical needs, and appealed this grievance through Steps II and III. *Id*. at PageID.152. This is grievance LCF-20-12-1220-28B ("1220") (ECF No. 25-1, PageID.186-189).

## II.     Legal standard

### A.     Summary judgment

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Rule 56 further provides that a party asserting that a fact cannot be or is genuinely disputed must support the assertion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations,

>  stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
>  (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).

In *Copeland v. Machulis*, 57 F.3d 476 (6th Cir. 1995), the court set forth the parties' burden of proof in a motion for summary judgment:

> The moving party bears the initial burden of establishing an absence of evidence to support the nonmoving party's case. Once the moving party has met its burden of production, the nonmoving party cannot rest on its pleadings, but must present significant probative evidence in support of the complaint to defeat the motion for summary judgment. The mere existence of a scintilla of evidence to support plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.

*Copeland*, 57 F.3d at 478-79 (citations omitted). "In deciding a motion for summary judgment, the court views the factual evidence and draws all reasonable inferences in favor of the nonmoving party." *McLean v. 988011 Ontario Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000).

### B. Lack of Exhaustion

#### 1. Exhaustion requirement

Defendants contend that Dittmer failed to exhaust his claims against them. The Prison Litigation Reform Act (PLRA) provides that a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must first exhaust available administrative remedies. *See Porter v. Nussle*, 534 U.S. 516 (2002); *Booth v. Churner*, 532 U.S. 731 (2001). A prisoner must exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process. *See Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741. One reason for creating prisoner grievance procedures under the PLRA was to create an administrative record for the court.

> Requiring exhaustion allows prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court. This has the potential to reduce the number of inmate suits, and also to improve the quality of suits that are filed by producing a useful administrative record.

*Jones v. Bock*, 549 U.S. 199, 204 (2007).

In order to properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules. *Id.* at 218; *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006). "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'" *Jones*, 549 U.S. at 218.

### 2. MDOC Grievance process

The MDOC requires prisoners to follow a three-step process to exhaust grievances. *See* MDOC Policy Directive ("PD") 03.02.130 (effective March 18, 2019). A prisoner must first attempt to resolve a problem with the staff member within two business days of becoming aware of the grievable issue, unless prevented by circumstances beyond his or her control. *Id.* at ¶ Q. If the issue is not resolved, then the grievant may file a Step I grievance on the prescribed form within five business days after the grievant attempted to resolve the issue with appropriate staff. *Id.* at ¶¶ Q and S. The Policy Directive provides the following directions for completing grievance forms:

> The issues should be stated briefly but concisely. Information provided is to be limited to the <u>facts</u> involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places and names of all those involved in the issue being grieved are to be included.

*Id.* at ¶ S (emphasis in original). The prisoner must send the Step I grievance to the appropriate grievance coordinator. *Id.* at ¶ W. If the prisoner is dissatisfied with the Step I response, or does not receive a timely response, he must request the appropriate form and send it to the Step II Grievance Coordinator. *Id.* at ¶ DD. Finally, if a prisoner is dissatisfied with the Step II response,

4

or does not receive a timely response, he must send a completed Step III grievance, using the appropriate form, to the Grievance and Appeals Section. *Id.* at ¶ HH.

### III. Discussion

In addressing Dittmer's grievances, the Court is aware that "the primary purpose of a grievance is to alert prison officials to a problem, not to provide personal notice to a particular official that he may be sued" and that "the grievance is not a summons and complaint that initiates adversarial litigation". *Jones*, 549 U.S. at 219, quoting *Johnson v. Johnson*, 385 F.3d 503, 522 (5th Cir. 2004). Under PD 03.02.130, a prison official is not alerted to the "problem" being grieved unless that problem is identified by the prisoner listing the "[d]ates, times, places and names of all those involved in the issue being grieved."

### A. Grievance 616

Defendants Dr. Papendick and Corizon contend that this grievance is not exhausted because Dittmer did not name them in the grievance. In this regard, Grievance 616 states:

> This Step I Prisoner Grievance is against Hydie Washington, et al, for their deliberate indifference to Grievant's serious medical need. Several requests have been made to surgically remove the cataract in Grievant's right eye, with the latest request essentially stating that the cataract has become so dense that if not removed in the near future, Grievant was at high risk of losing all sight in that eye permanently. Because Grievant is in the custody and care of the Michigan Department of Corrections (MDOC), it is the custodial duty of said MDOC to provide Grievance with adequate and proper medical care. The denial of said requests to surgically remove said cataract so as to prevent Grievant from permanently losing all sight in that eye constitutes a deliberate indifference to Grievant's serious medical need, and if need be, Grievant will file an action so that the MDOC and its contracted Health Care Provider may explain to the court why allowing Grievant to go blind in that eye is preferrable [sic] to removing the cataract.

Grievance 616 at PageID.205.

The MDOC addressed the merits of the grievance, which it summarized as "Grievant complained about not having cataract surgery. Date of incident 6/20/19." *Id*. at

PageID.204. The MDOC addressed the grievance by reviewing Dittmer's prison medical records and explaining why the surgery was deferred:

> Upon investigation of the Electronic Medical Record (EHR), the ACMO [Assistant Chief Medical Officer] deferred the request for cataract surgery noting the criteria for surgical intervention has not been met.

*Id*. at PageID.206. In the Step II response, the MDOC addressed the specific reasons why the February 8, 2019 request for cataract surgery was denied. *Id*. at PageID.204. In denying the grievance at Step III, the MDOC stated in part,

> Grievant is challenging the medical judgment of his Medical Provider. Your disagreement with the judgment of someone qualified and capable of making same does not support a claim for denial of care.

*Id*. at PageID.202.

The record reflects that defendant Dr. Papendick reviewed the request. *See* MDOC Consultation (ECF No. 1-3, PageID.28-29). Dr. Papendick's denial included the notation:

> This is the reviewing physician ONLY, specialists should not be contacting them directly. Any further communication, documents, or questions should be directed to the Site Medical Provider listed above.

*Id*. The form identified the Site Medical Provider as Carolyn M. Pierce, OD. *Id*.

Defendants' motion raises the question of how a prisoner grieves a decision made by the MDOC, Corizon, or both, to deny a request for surgery. While the grievance responses refer to a decision made by the ACMO, the records reflect that the decision was made by Dr. Papendick, who is identified on a form as a "UM" Reviewer. *Id*. Dr. Papendick did not treat Dittmer and had no contact with him. In the amended complaint, Dittmer identifies defendant Dr. Papendick as follows:

> Defendant Keith Papendick (Papendick), Reviewing Utilization Management Physician, at all times herein relevant, was under contract with and/or in the employ of Corizon and/or the MDOC to provide timely medical care, treatment, and services to all prisoners confined within the MDOC, including Plaintiff.

Amend. Compl. at PageID.148.  Defendants make no attempt to clarify Dr. Papendick's status.

From Dittmer's perspective, his prison medical provider acted appropriately by making the request for surgery.  The subject of Dittmer's grievance was a medical decision made by an MDOC official, medical reviewer, ACMO, Utilization Manager, and/or Dr. Papendick.  The confusing nature of filing a grievance involving this type of medical decision is apparent from Grievance 616.  In describing the attempt made to resolve the issue prior to writing the grievance, Dittmer stated,

> Grievant spoke with his then Medical Provider (Groff) as to whom would make the appeal of Lansing's denial of a request to surgically remove a cataract from Grievant's right eye, this Grievant or Verizon [sic] Health Care, and was informed that the Medical Provider would be the entity to make the appeal. Grievant filed a medical kite asking about the status of said appeal, and from the response, can only infer that no such appeal was ever made.

Grievance 616 at PageID.205.

Dittmer had no personal interaction with Dr. Papendick with respect to the request for cataract surgery.  While Dittmer did not name Dr. Papendick in Grievance 616, the MDOC was alerted to Dr. Papendick's decision and addressed the propriety of that decision.  As reflected in its response to the grievance, the MDOC was fully aware of the matter be being grieved and the individuals involved.  Based on this record, the Court concludes that Dittmer's Grievance 616 adequately identified the issue and individuals involved with Dr. Papendick's decision. The Court further concludes that Dittmer properly exhausted this grievance against the defendant and decisionmaker – Dr. Papendick – as required by the PLRA.  *See Jones*, 549 U.S. at 219 ("the primary purpose of a grievance is to alert prison officials to a problem, not to provide personal notice to a particular official that he may be sued").

While Dittmer directed the grievance at MDOC, he also referred to "its contracted Health Care Provider." Grievance 616 at PageID.205. Given the circumstances in this case, the Court construes Grievance 616 as seeking relief against Corizon and concludes that Dittmer properly exhausted this grievance against Corizon.

The next question is which federal claims Dittmer exhausted in Grievance 616. In the amended complaint, Dittmer alleged that defendants Dr. Papendick and Corizon denied requests made for cataract surgery on August 24, 2018, October 12, 2018, and February 8, 2019. Amend. Compl. at PageID.149-150. In Grievance 616, Dittmer referred to the most recent request and the MDOC reviewed Dittmer's medical records from that request (February 8, 2019). Grievance 616 at PageID.204-205. Based on this record, the Court concludes that Grievance 616 was limited to the February 8, 2019 request for surgery. Accordingly, Dittmer properly exhausted his claim that defendants Dr. Papendick and Corizon violated his constitutional rights when they denied the February 8, 2019 request.

### B. Grievance 1014

In Grievance 1014, Dittmer complained that Dr. Papendick was deliberately indifferent to his serious medical needs because he denied the three requests for surgery submitted on: August 24, 2018; October 12, 2018; and February 8, 2019. Grievance 1014 at PageID.195. Although the denials occurred in 2018 and 2019, Dittmer stated that the "incident" occurred on October 20, 2020, and filed Grievance 1014 on October 22, 2020. *Id*. at PageID.194. The MDOC rejected the grievance "Per 03.02.130 – Untimely, multiple issues". *Id*. The rejection was upheld at Steps II and III. *Id*. at PageID.190-191. Based on this record, Dittmer did not properly exhaust the claims raised in Grievance 1014. *Jones*, 549 U.S. at 218-19; *Woodford*, 548 U.S. at 90-93.

### C.     Grievance 1220

In Grievance 1220, Dittmer complained that a number of individuals, including Dr. Papendick, were deliberately indifferent to his serious medical needs because Dr. Papendick denied three recommendations for surgical removal of the cataracts. Grievance 1220 at PageID.188-189. As discussed, the denials occurred in 2018 and 2019. Dittmer dated the grievance December 15, 2020, and stated that the "incident" was ongoing. *Id*. at PageID.188. The MDOC rejected the grievance "Per 03.02.130 – Vague, appears to be untimely & multiple issues". *Id*. The rejection was upheld at Steps II and III. *Id*. at PageID.186-187. Based on this record, Dittmer did not properly exhaust the claims raised in Grievance 1014. *Jones*, 549 U.S. at 218-19; *Woodford*, 548 U.S. at 90-93.

### D.     Summary

Dittmer alleged that defendants violated his constitutional rights when they denied his medical provider's requests for cataract surgery made on August 24, 2018, October 12, 2018, and February 8, 2019. In Grievance 616, Dittmer properly exhausted his claim that Dr. Papendick and Corizon wrongfully denied the February 8, 2019 request for surgery. Dittmer filed two other grievances, 1014 and 1220, which related to the denials of all three requests. However, the latter two grievances were rejected and not properly exhausted. Based on this record, the only claim which Dittmer properly exhausted was that defendants denied the February 8, 2019 request for surgery.

### IV.    Recommendation

For these reasons, I respectfully recommend that defendants' motion for summary judgment be **DENIED** as to Dittmer's claim that Dr. Papendick and Corizon wrongfully denied

the cataract surgery request made on February 8, 2019, and that the motion be **GRANTED** in all other respects.


Dated:  December 7, 2022                     /s/ Ray Kent
                                             RAY KENT
                                             United States Magistrate Judge


ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report.  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order.  *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).