UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GORDON SCOTT DITTMER,

    Plaintiff,

v.

CORIZON HEALTH, INC, et al.,

    Defendants.

_____/

CASE No. 1:22-CV-77

HON. ROBERT J. JONKER

# ORDER REGARDING
# REPORT AND RECOMMENDATION

The Court has reviewed Magistrate Judge Kent's Report and Recommendation (ECF No. 110); Plaintiff's Objection to the Report and Recommendation (ECF No. 111); Defendant's Response (ECF No. 112); and Plaintiff's Reply (ECF No. 113). Under the Federal Rules of Civil Procedure, where, as here, a party has objected to portions of a Report and Recommendation, "[t]he district judge . . . has a duty to reject the magistrate judge's recommendation unless, on de novo reconsideration, he or she finds it justified." 12 WRIGHT, MILLER, & MARCUS, FEDERAL PRACTICE AND PROCEDURE § 3070.2, at 381 (2d ed. 1997). Specifically, the Rules provide that:

> The district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to. The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions.

FED R. CIV. P. 72(b)(3). De novo review in these circumstances requires at least a review of the evidence before the Magistrate Judge. *Hill v. Duriron Co.*, 656 F.2d 1208, 1215 (6th Cir. 1981). The Court has reviewed de novo the claims and evidence presented to the Magistrate Judge; the Report and Recommendation itself; and Plaintiff's objections.

The matter before the Court is on Plaintiff's Eighth Amendment claim against Defendant Papendick. The Magistrate Judge correctly noted that to prevail on a claim of deliberate indifference, a plaintiff must satisfy objective and objective components. The Magistrate Judge determined that Plaintiff could satisfy the former component, but not the latter. The Court agrees with the Magistrate Judge's conclusion that Plaintiff has met the objective component of an Eighth Amendment claim and accordingly adopts this aspect of the Report and Recommendation. Thus, the inquiry boils down to whether Plaintiff can meet the subjective component of an Eighth Amendment claim. Here, the Court respectfully disagrees with the Magistrate Judge because it concludes a reasonable jury could find this component has been met.

The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind" in denying medical care. *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000). Deliberate indifference "entails something more than mere negligence," but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmer v. Brennan,* 511 U.S. 825, 835 (1994). However, not every claim by a prisoner that he has received inadequate medical treatment states a violation of the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 105 (1976). As the Supreme Court explained:

> [A]n inadvertent failure to provide adequate medical care cannot be said to constitute an unnecessary and wanton infliction of pain or to be repugnant to the conscience of mankind. Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or

2

>omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

*Id.* at 105–06 (quotations omitted). Thus, differences in judgment between an inmate and prison medical personnel regarding the appropriate medical diagnoses or treatment are not enough to state a deliberate indifference claim. *Darrah v. Krisher*, 865 F.3d 361, 372 (6th Cir. 2017). And, as the Magistrate Judge recognized, the same is typically true of differences of opinion between medical professionals. *See Reid v. Sapp*, 84 F. App'x 550, 552 (6th Cir. 2003) (noting a difference in medical opinion with respect to a course of treatment did not give rise to an Eighth Amendment claim); *see also Lane v. Wexford Health Sources,* 510 F. App'x 385, 388 (6th Cir. 2013) (same).

So, more generally, the Sixth Circuit distinguishes "between cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received inadequate medical treatment." *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976). If "a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Id.*; *see also Rouster*, 749 F.3d at 448; *Perez v. Oakland Cnty.*, 466 F.3d 416, 434 (6th Cir. 2006); *Kellerman v. Simpson*, 258 F. App'x 720, 727 (6th Cir. 2007); *McFarland v. Austin*, 196 F. App'x 410 (6th Cir. 2006); *Edmonds v. Horton*, 113 F. App'x 62, 65 (6th Cir. 2004); *Brock v. Crall*, 8 F. App'x 439, 440–41 (6th Cir. 2001); *Berryman v. Rieger*, 150 F.3d 561, 566 (6th Cir. 1998). "Where the claimant received treatment for his condition, as here, he must show that his treatment was 'so woefully inadequate as to amount to no treatment at all.'" *Mitchell*, 553 F. App'x at 605 (quoting *Alspaugh v. McConnell*, 643 F.3d 162, 169 (6th Cir. 2011)). He must demonstrate that the care he received was "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be

3

intolerable to fundamental fairness." *See Miller v. Calhoun Cnty.*, 408 F.3d 803, 819 (6th Cir. 2005) (quoting *Waldrop v. Evans*, 871 F.2d 1030, 1033 (11th Cir. 1989)).  Applying the above standards, the Court believes there is enough in the summary judgment record by which a jury could reasonably conclude the subjective component has been met.

There is little dispute over what the record says.  Defendant Papendick was a medical doctor who worked for Corizon Health Inc., which provided medical care to MDOC inmates such as Plaintiff.  One of Defendant's duties was to review, and to approve, requests for medical treatment submitted by medical providers for inmate patients.  In this case, Defendant was responsible for reviewing certain requests for Plaintiff's medical treatment in 2018 and 2019.

Defendant's review began with a February 2, 2018, examination that Plaintiff had with Dr. Brown, O.D., for a glaucoma check with secondary complaints of headaches.[1]  The glaucoma scans were noted to be poor due to a cataract in his right eye.  (ECF No. 101-1, PageID.647). While Dr. Brown remarked the cataract was "worsening," Dr. Brown determined that Plaintiff nevertheless was not a candidate for cataract surgery.  Dr. Brown further noted his belief that Plaintiff's headaches were unrelated to his vision and referred Plaintiff "back to medical" for further evaluation.  (*Id.*).

Plaintiff was also seen at MDOC medical on February 16, 2018, for his headaches. Plaintiff reported headaches on his right side behind his eye and radiating to the back of his head. He reported he was photosensitive, and that the headaches were constant, albeit varying in

---

[1] As Defendant points out, the focus here is on Dr. Papendick's decision making a year later in February 2019, but as even Defendant Papendick recognizes, the earlier treatment history can provide needed context.

4

intensity. (ECF No. 101-2, PageID.649). Only the first page of the treatment note is in the record, but it appears Plaintiff was referred for a CT. And an April 11, 2018, treatment note reflects that the result of that scan was negative. (ECF No. 101-4, PageID.653).

Plaintiff returned to Dr. Brown a few months later in August 2018. Dr. Brown commented that Plaintiff:

> has complained of pain in or around the right eye for several months. BCBVA is 20/20 because of the left eye. His right eye which is 20/300 has a very dense cataract and there is no observation of the retina or posterior pole OD. We have ruled out glaucoma and he has had a CT/MRI to rule out neurological issues. The only conclusion I can make is the need for cataract surgery.

(ECF No. 101-5, PageID.658).

Defendant Papendick approved this consultation, and Plaintiff was examined by Dr. Gago—an ophthalmologist—on October 11, 2018. Following his examination, Dr. Gago recommended cataract surgery:

> Cataract Eval with Dr. Gago on 10/11/18. Dense NS Cataract OD. BVA OD 20/400, OS 20/20. BCBVA 20/20 from OS. No view of posterior pole OD. H/o glaucoma suspect. Cataract surgery OD would help improve vision and glaucoma testing. Pt is fall risk due to imbalance. Schedule Cataract Surgery OD with Dr. Gago at Blake Woods.

(ECF No. 101-5, PageID.655).

But Defendant Papendick did not agree, and did not approve the surgery. He stated: "Medical necessity not demonstrated at this time. Follow in onsite clinic. POSSIBLE glaucoma, undefined upon request, is not a medical condition requiring visualization of the posterior compartment." (ECF No. 101-7, PageID.664).

5

Plaintiff sought continued treatment for his headaches. On November 1, 2018, a nurse practitioner requested a neurological consult based on the practitioner's examination and Plaintiff's medical history. Dr. Papendick approved the consultation. (ECF No. 101-8). The consultation resulted in a plan for medication changes[2] and a follow-up in three months. (ECF No. 101-9, PageID.669). Two months later, during an annual physical, Plaintiff complained about constant headaches. They were aggravated by anxiety, and relieved by over-the-counter medications and relaxation. Additional symptoms included double vision, photophobia, and stiff neck. (ECF No. 101-10, PageID.672). A physical examination noted the cataract in Plaintiff's right eye but otherwise did not result in any significant findings. (ECF No. 101-10, PageID.673). Plaintiff was started on new medications to treat his headache, and it was noted that Plaintiff had a follow up with neurology the next month. (*Id.* at PageID.674).

On February 8, 2019, Plaintiff had his neurological follow up with Dr. Pierce, OD for his reports of headaches. Dr. Pierce concurred with Dr. Gago's recommendation for surgery:

> Cataract, Mature, OD - established, worsening - vision affected - may improve with surgery - Worsening mature cataract OD. Vision is LP OD. Prior f/u 407 for Cataract Surgery was ATP'd in Oct. 2018. Recommend resubmitting f/u 407 to Dr. Gago for Cataract Surgery OD given potential risk of loss of vision if cataract is not removed.

ECF No. 101-11, PageID.678).

Dr. Papendick denied the surgery request. As defendant frames it in the brief, he "did not revise his prior decision on February 12[, 2018]." (ECF No. 101-PageID.633). To be specific,

---

[2] The changes included tapering down Plaintiff's prednisone dosage which presumably was to rule out any rebounding headaches due to medication overuse

6

he stated in a conclusory remark that "[m]edical necessity not demonstrated at this time" and that the "[c]riteria for cataract surgery was not me[t]."  (ECF No. 101-12, PageID.682).  This is the decision at issue here.  It is undisputed that Plaintiff subsequently underwent surgery to remove the cataract.

The above context supports the conclusion that a jury could find the subjective prong met. What is clear is that the record begins with a glaucoma check with Dr. Brown.  At the time, Dr. Brown did not believe that Plaintiff's headaches were related to his eyes.  But that appears to have changed.  Indeed, when Plaintiff returned to Dr. Brown six months later complaining about headaches, Dr. Brown expressly connected that headache pain to Plaintiff's cataract.  (ECF No. 101-5, PageID.658).  This is because "glaucoma had been ruled out" and a CT had also ruled out neurological issues.  So "the only conclusion [Dr. Brown] could make"—plainly in reference to Plaintiff's headaches—"was the need for cataract surgery."  *Id.*  Thereafter Dr. Gago recommended surgery, which Dr. Papendick denied because removal of the cataract was not medically necessary to rule out possible glaucoma.  Plaintiff sought continued treatment for his headaches, and Dr. Pierce also recommended surgery to remove the worsening cataract, expressly cautioning of the potential risk of loss of vision if the cataract was not removed.  Again, however, Dr. Papendick did not agree because, as the defense says, there was no reason to revisit his earlier determination.

In the Court's mind, there are two deficiencies by which a jury could conclude that the subjective prong has been met.  First, the defense brief argues that because Plaintiff was complaining about headaches, and not vision loss, there is no constitutional violation in failing to recommend cataract surgery.  But even the defense admits that there can be a connection between

vision loss and headaches. (ECF No. 101, PageID.640). And here Dr. Brown expressly connected Plaintiff's headaches to his eye vision. Dr. Gago subsequently recommended surgery, and so too did Dr. Pierce. Nevertheless, Dr. Papendick found no reason to revisit his earlier determination that surgery to remove the cataract.

Beyond that, the constant refrain throughout the medical record is that Plaintiff's cataracts were worsening. This culminated with Dr. Pierce's statement that there was a potential risk of loss of vision if the cataract was not removed. Somewhat confusingly, Defendant seems to admit in his briefing that in other contexts he would not be qualified to critique Dr. Pierce's medical decision making (ECF No. 112, PageID.806). But that appears to be precisely what he has done here. "[T]oo many deviations below the mean can amount to deliberate indifference." *Bownes v. Washington*, No. 14-11691, 2023 WL 424259, at *10 (E.D. Mich. Jan. 26, 2023). The Court concludes that a jury could find that Defendant Papendick was singularly focused on Plaintiff's glaucoma, and did not recognize the severity of the cataract in its own right, or the connection that Dr. Brown made between Plaintiff's cataract and his headaches, and the subsequent opinion of two professionals that Plaintiff needed surgery. Accordingly, the defense motion is properly denied. But because a reasonable jury could also conclude otherwise, Plaintiff's motion (ECF No. 98) which seeks summary judgment in his favor is also denied.

## CONCLUSION

**ACCORDINGLY, IT IS ORDERED** that the Report and Recommendation of the Magistrate Judge (ECF No. 110) is **APPROVED AND ADOPTED** as the opinion of the Court to the extent specified above.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Summary Judgment (ECF No.

98) is **DENIED.**

      **IT IS FURTHER ORDERED** that Defendant's Motion for Summary Judgment (ECF No. 101) is **DENIED.**

Dated:   February 5, 2025          /s/ Robert J. Jonker
                                              ROBERT J. JONKER
                                              UNITED STATES DISTRICT JUDGE