**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF MICHIGAN**

GORDON DITTMER, 175464

       Plaintiff,

v.

CORIZON HEALTH, INC., *et al.*

       Defendants,

Case No.: 1:22-cv-00077
District Judge: Robert  J. Jonker
Magistrate Judge: Ray Kent

---

**BRIEF IN SUPPORT OF**
**DEFENDANT KEITH PAPENDICK, MD'S**
**MOTION FOR SUMMARY JUDGMENT**

Respectfully submitted,

**HACKNEY ODLUM & DARDAS**

Dated: January 30, 2026

By:_____
Thomas G. Hackney (P81283)
Connor A. McLaughlin (P83229)
Attorneys for Defendant Keith
Papendick, MD
10850 E. Traverse Hwy. Ste. 4440
Traverse City, MI 49684
(231) 642-5026
thackney@hodlawyers.com
cmclaughlin@hodlawyers.com

1

# TABLE OF CONTENTS

INDEX OF AUTHORITIES.................................................................................3

INDEX OF EXHIBITS.....................................................................................4

STATEMENT OF ISSUES PRESENTED ...........................................................5

I.   STATEMENT OF FACTS ........................................................................7

   A.   Plaintiff's and Defendant's Connection to Tehum Bankruptcy......................7

   B.   Corizon/Tehum Bankruptcy Proceedings.......................................................8

   C.   Contents of Bankruptcy Plan........................................................................10

   D.   Motions to Enforce Releases .......................................................................12

II.   STANDARD OF REVIEW.......................................................................14

III.   ARGUMENT ..........................................................................................15

   A.   Plaintiff has agreed to release his claims against Dr. Papendick..................15

   B.   Defendant is a "Released Party".................................................................18

   C.   Plaintiff Opted Into the Plan.......................................................................20

   D. Plaintiff's arguments regarding "Personal Capacity" do not affect the terms of the Bankruptcy Plan.......................................................................................21

IV. RELIEF REQUESTED ..................................................................................22

CERTIFICATE OF COMPLIANCE ...................................................................24

CERTIFICATE OF SERVICE (E-FILE) .............................................................25

## INDEX OF AUTHORITIES

<u>Cases</u>
*Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970)………………………………….14

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986)……………………………14

*Duchon v. Cajon Co.,* 791 F.2d 43 (6th Cir. 1986)………………………………….14

*Harrington v. Purdue Pharma, L.P.*, 603 U.S. 204 (2024)……………………….20

*Lenz v. Erdmann Corp.*, 773 F.2d 62 (6th Cir. 1985)…………………………….....14

*Scott v. Harris*, 550 U.S. 372, 380 (2007)…………………………………………...14


<u>Rules</u>
Fed. R. Civ. P. 56……………………………………………………………….6,14

**INDEX OF EXHIBITS**

**Exhibit 1**       Plaintiffs' Proof of Claim

**Exhibit 2**       Order Approving Disclosures and Solicitation (w/o exhibits)[1]

**Exhibit 3**       Tehum Care Services Joint Chapter 11 Plan

**Exhibit 4**       Solicitation Package Sent to Creditors[2,3]

**Exhibit 5**       Declaration and Tables of Votes[4]

**Exhibit 6**       Order Confirming Bankruptcy Plan[5]

**Exhibit 7**       Notice of Effective Date[6]

**Exhibit 8**       Tehum Voluntary Chapter 11 Petition[7]

**Exhibit 9**       Claim Bar Order[8]

**Exhibit 10**      Claim Bar Date Notice

**Exhibit 11**      Opt-Out Form

**Exhibit 12**      YesCare Omnibus Motion[9]

**Exhibit 13**      YesCare List of Cases to be Enjoined[10]

**Exhibit 14**      Papendick Concurrence in YesCare Motion[11]

**Exhibit 15**      Certificate of Service for Papendick Concurrence[12]

**Exhibit 16**      Bankruptcy Order on YesCare Motion[13]

---

[1] Document 1813 in the Tehum Care Services Bankruptcy, SD TX, Case No. 23-90086. Bankruptcy Docket.

[2] Document 1815 in the Bankruptcy.

[3] The Plan starts on page 4. The Disclosure statement starts on pg. 70.

[4] Document 1993 in the Bankruptcy.

[5] Document 2014 in the Bankruptcy.

[6] Document 2088 in the Bankruptcy.

[7] Document 1 in the Bankruptcy.

[8] Document 499 in the Bankruptcy.

[9] Document 2160 in the Bankruptcy.

[10] Document 2360 in the Bankruptcy.

[11] Document 2178 in the Bankruptcy.

[12] Document 2184 in the Bankruptcy.

[13] Document 2374 in the Bankruptcy.

## STATEMENT OF ISSUES PRESENTED

WHETHER THE COURT SHOULD GRANT DEFENDANT'S MOTION FOR SUMMARY JUDGEMENT WHERE THERE IS NO ISSUE OF MATERIAL FACT THAT PLAINTIFF DITTMER GRANTED A RELEASE OF ALL CLAIMS AGAINST DEFENDANT PAPENDICK BY OPTING INTO THE TEHUM BANKRUPTCY PLAN?

DEFENDANT STATES:                              YES
PLAINTIFF STATES:                              NO

# **CONTROLLING/APPLICABLE AUTHORITY**

Under Fed. R. Civ. P. 56, summary judgment is proper if the moving party demonstrates there is no genuine issue as to any material fact. The Supreme Court has interpreted this to mean that summary judgment is appropriate if the evidence is such that a reasonable jury could find only for the moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

"Except as provided in the Plan, Holders of Channeled PI/WD claims shall be enjoined from prosecuting any outstanding or filing future Claims against the Released Parties in any forum whatsoever, including any state, federal, or non-U.S. court." (Exhibit 3, Tehum Bankruptcy Plan, pg. 29[14]).

"'Released Parties' means collectively the following, in each case in its capacity as such with each being a Released Party" (a) the Debtor [Tehum Care Services, Inc.]…and for each entity listed in (a) through (z), each of their respective current and former…employees." (Exhibit 3, pg. 18)

"The parties listed on Exhibit A to this Order were served an Opt-Out Release Form and are bound by the consensual third-party releases in the Plan. These parties are restrained and enjoined from taking any action to prosecute any causes of action for the purpose of directly, indirectly, or derivatively collecting, recovering, or receiving payment, satisfaction, or recovery from any released Party based on released Causes of Action (as such terms are defined in the Plan)." (Exhibit 16, Order Resolving YesCare Motion, pg. 6).

---

[14] References to page numbers are to the numbers applied in the bottom right of each page, not the center page numbers, for the Exhibits that have bottom right page numbers.

## I.    STATEMENT OF FACTS

A. Plaintiff's and Defendant's Connection to Tehum Bankruptcy

This matter arises out of medical care and treatment Plaintiff Gordon Dittmer received in February 2019 when he was an inmate at Lakeland Correctional Facility (LCF). (ECF No. 24). After the screening opinion (ECF No. 9) and the Court administratively closing the case as to Defendant Corizon Health, Inc. (ECF No. 66), Defendant Papendick is the only remaining defendant. In February 2019, Dr. Papendick was employed by Corizon Health, Inc. ("Corizon") which had a contract with the Michigan Department of Corrections (MDOC) to provide prison medicine services. Plaintiff Gordon Dittmer alleges Dr. Papendick was deliberately indifferent to his need for cataract surgery in February 2019 in violation of the Eighth Amendment to the US Constitution.

Defendant Papendick's employment with Corizon ended in September 2021 when Corizon's MDOC contract ended. Subsequently, Corizon reincorporated in Texas and underwent a divisional merger in May 2022 into two new companies: a new Corizon and CHS, TX. This second Corizon was assigned various liabilities, including the duty to defend and indemnify former employees in lawsuits in states where Corizon no longer had contracts. CHS, TX received the active contracts. (Exhibit 4, Solicitation Package-Disclosure Statement, pg. 90). New Corizon renamed itself Tehum Care

Services, Inc. and on  February 13, 2023 filed for Chapter 11 bankruptcy. (Exhibit 8, Tehum Voluntary Petition).

B. Corizon/Tehum Bankruptcy Proceedings

Tehum's bankruptcy was brought in the Southern District of Texas, Houston Division and assigned case number 23-90086 before Judge Christopher Lopez. The Bankruptcy Court ordered that all entities asserting a claim against Tehum that arose before the petition date were required to file an original, written proof of claim using a proof of claim form. (Exhibit 9, Bar Date order; Exhibit 10, Bar Date Notice). Plaintiff Dittmer filed two proofs of claims: claims 361 on June 14, 2023 and claim 694 on August 15, 2023. (Exhibit 1, Plaintiff POC). This made him a creditor to the Tehum Bankruptcy.

The bankruptcy proceedings went through many fits and starts between February 2023 and September 2024, including multiple mediations, mediators, and dispositive motions. The primary parties to the bankruptcy were the debtor Tehum, an appointed Unsecured Creditors Committee, an appointed Tort Claimants Committee, and YesCare Corp, which owns CHS, TX. These parties announced at a hearing on August 26, 2024 that there was a resolution and that they would be filing a proposed plan. They filed a plan (Bankruptcy Docket No. 1739), a disclosure statement (Bktcy. Dkt. No. 1740), and a motion to approve the disclosure statement and voting procedures (Bktcy

Dkt. No. 1741) on October 2, 2024.[15] The contents of the final approved Bankruptcy Plan (hereinafter, "the Plan") are discussed in detail in the next section, but in short YesCare would pay $50 million into the estate in exchange for the release of claims against Tehum, YesCare, related entities, and former and current employees. (Exhibit 3). Judge Lopez granted the Joint Motion and the Plan was submitted to creditors for voting starting November 13, 2024. (Exhibit 2, Order Approving Disclosures and Solicitation). The list of documents sent to incarcerated claimants is on page 6 of the Order and included the disclosure statement, Plan, an opt-out release form, a ballot for voting, and a pre-addressed return envelope. (Id.; see also Exhibit 4, Solicitation Package). The deadline for voting was February 21, 2025 at 5pm Central. (Id.).

After voting, the Plan was approved by Tehum's creditors (Exhibit 5) and YesCare's right to withdraw from the Plan if enough tort claimant creditors opted-out was not triggered or exercised. (See Exhibit 3, pg. 34). Judge Lopez confirmed the Plan on March 3, 2025 (Exhibit 6) and notice was given that the "Effective Date" of the Plan was March 31, 2025. (Exhibit 7).

---

[15] All bankruptcy documents, in addition to the ones attached as Exhibits, can be found at the dedicated Tehum Bankruptcy website at https://veritaglobal.net/tehum/document/list/5819

C. <u>Contents of Bankruptcy Plan</u>

The Tehum Bankruptcy Plan works by first channeling various creditors into two broad categories: "(1) PI/WD claims, which are claims relating to alleged personal injury tort or wrongful death claims, generally arising out [of] allegations of medical malpractice, abuse, or neglect at facilities in which the Debtor served as a health care provider; and (2) Non-PI/WD Claims or GUC Claims, which are generally contract and trade claims based on the Debtor's contractual duties owed to contract counterparties and/or the Debtor's obligations owed to third parties." (Exhibit 4, pg. 75). Each category of claimants would get $25 million and an even share of the rights to various tax credits and other sources of money that would fund separate trusts. Plaintiff is a PI/WD claimants. (Exhibit 3, pg. 12) and had the option to participate in the Plan or opt-out of its treatment of their claims. There were four options for PI/WD claimants: they could opt-in and receive an expedited $5,000 payment, they could opt-in and go through a trust mediation process to receive a portion of the PI/WD Trust, they could opt-out to pursue a claim against a Debtor policy of insurance, or they could opt out of the Plan entirely. The first two categories would become Class 6 claimants, the third would become Class 7 Claimants, and the fourth would be Class 8 claimants. (Exhibit 3, pgs. 26-31).

In exchange for the right to either an expedited or a trust payment, Class 6 claimants, also called Consenting Claimants (Exhibit 3, pg. 4), are "enjoined from

prosecuting any outstanding or filing future Claims against the Released Parties in any forum whatsoever, including any state, federal, or non-U.S. court. (Id., pg. 29). This release is also encapsulated in the Consensual Claimant Release provision in Article IX.D. of the Plan (Id., pg. 53). An opt-out release form was provided to all creditors and if creditors wished to opt-out of the Consensual Claimant release, they were required to return the form prior to February 21, 2025. (Id., pg. 26; Exhibit 11, pg. 2). Failing to opt-out was considered an opt-in and release. (Exhibit 3, pg. 26; see also Exhibit 11, Opt Out Form, pg. 4, ("if You do NOT affirmatively "Opt Out" of the Consensual Claimant Release by submitting this Opt-Out Release Form prior to the voting deadline, the Consensual Claimant Release will bar you from initiating any Cause of Action against the Released Parties in the manner and to the extent spelled out in the Plan and/or order of the Bankruptcy Court, as may be applicable." (emphasis removed in part))).

A "Released Party" is defined under the Plan as: "(a) the Debtor [Tehum, formerly known as Corizon], [various people and entities listed (b)-(z) related to the bankruptcy proceedings or the divisional merger]…and for each entity listed in (a) through (z), each of their respective current and former officers, directors, managers, employees, contractors, agents, attorneys, and other professional advisors, Insiders, and Affiliates, provided, however, that a Non-Released Party shall not be a "Released Party." (Exhibit 3, pg. 18). "Non-Released Parties" are defined in the Plan as well and

include "any entity co-liable with one or more Released Parties, including a Governmental Unit, on any claim." (Id., pg. 15).

Plaintiff voted on the Plan and did not opt out.  A representative of Verita Global, which counted the votes, submitted a Declaration on February 25, 2025 on the voting procedures and reported the tabulation of votes, including a number of charts. (Exhibit 5, Declaration). Mr. Dittmer's name appears on pg. 20 of 37 as a Class 6 Channeled PI/WD Claim. He returned his ballot on December 10, 2024. He voted to accept the Plan. (Id., pg. 20). Because he is in Class 6 rather than Class 7, it means he did not opt out of the Plan, as confirmed by Exhibit B, the Opt-Out Summary which does not have his name. (Id., pg. 33 of 37)

D.    Motions to Enforce Releases

In May 2025, YesCare filed a motion to enforce the terms of the bankruptcy plan, in particular the channeling injunction. (Ex. 12, YesCare Omnibus Motion to Enjoin Plaintiffs from Prosecuting Cases Against Released Parties, Bankruptcy Dkt. No. 2160). YesCare sought an order from the Bankruptcy Court confirming the injunction applied to various named parties and lawsuits. YesCare listed *Dittmer v Corizon*, USDC for the Western District of Michigan, 1:21-cv-77—i.e. this case—and Mr. Dittmer as a claim and party that the channeling injunction applied to. (Ex. 13, YesCare List of Cases to be Enjoined). Dr. Papendick, along with 30+ other former employees of Corizon in Michigan filed a Motion and Concurrence in YesCare's

Motion and submitted a list of cases to be enjoined. Mr. Dittmer and this suit were listed and Plaintiff was served at his current facility. (Ex. 14, Former Michigan Corizon Employees' Motion and Concurrence in YesCare's Omnibus Motion to Enjoin Plaintiffs from Prosecuting Cases against Released Parties; Ex. 15, Proof of Service).

Judge Lopez issued his ruling on August 7, 2025. (Ex. 16, Bankruptcy Order on YesCare Motion). Judge Lopez sorted the claims and parties into three categories and placed them in Exhibits A-C of his Order. Exhibit A were parties that received an Opt-Out release form and did not opt out "and are therefore bound by the consensual third-party releases in the Plan." (Id., pg. 4). Exhibit B had parties that that were not served an Opt-Out release form and Exhibit C had parties that did receive a form but also a notice of non-voting status. Exhibit B parties were not barred by the Plan from continuing their claims and the court held further briefing and hearings on the Exhibit C parties. Mr. Dittmer is in Exhibit A to the Order, listed with the present case number. (Id. pg. 7). Therefore, he is "restrained from and enjoined from taking any action to prosecute any causes of action for the purpose of directly, indirectly, or derivatively collecting, recovering, or receiving payment satisfaction, or recovery from any Released Party based on released Causes of Action." (Id., pg. 6). Judge Lopez confirmed that "the third-party releases cover current and former employees of Tehum." (Id, pg. 4).

## II.    STANDARD OF REVIEW

Defendant Keith Papendick requests that this Court grant his motion for summary judgment because Plaintiff's claims against Defendant Papendick are barred by his Consensual Claimant Release in the Tehum Bankruptcy. Under Fed. R. Civ. P. 56, summary judgment is to be entered if the moving party demonstrates there is no genuine issue as to any material fact. The Supreme Court has interpreted this to mean that summary judgment should be entered if the evidence is such that a reasonable jury could find only for the moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The moving party has "the burden of showing the absence of a genuine issue as to any material fact." *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). See also *Lenz v. Erdmann Corp.*, 773 F.2d 62 (6th Cir. 1985).

In resolving a summary judgment motion, the Court must view the evidence in the light most favorable to the non-moving party. *Duchon v. Cajon Co.,* 791 F.2d 43, 46 (6th Cir. 1986). "[W]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Scott v. Harris*, 550 U.S. 372, 380 (2007)(quotations and citation omitted). Similarly, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Id.*

14

## III.    ARGUMENT

Plaintiff Gordon Dittmer is a creditor to the Tehum Bankruptcy and is bound by how the Plan deals with his claims. The Plan bars creditors who do not opt-out of the Plan from bringing or maintaining a lawsuit against Released Parties, as defined by the Plan. Mr. Dittmer did not opt-out and Defendant Papendick is a Released Party as a former employee of the Debtor Tehum. Therefore Plaintiff has released his claim against Defendant Papendick and summary judgment is appropriate.

A. <u>Plaintiff has agreed to release his claims against Dr. Papendick</u>

Counsel for Defendant Papendick represents a number of former Corizon employees and for just under three years have been asking various federal courts in Michigan to stay proceedings in the various cases. There were two reasons to do so: 1. the possibility that the bankruptcy plan would provide for the defense and indemnification of Corizon's former employees that had stopped when Corizon/Tehum went bankrupt, and 2. the possibility that the bankruptcy would provide tort plaintiffs with money to resolve claims against Corizon or its former employees. The first unfortunately did not occur, but the various plaintiffs', defendants', and judges'—including this Court's—patience has been rewarded with the occurrence of the second. There is now a pot of money from Tehum/Corizon for

claims against it and its former employees and a mechanism for tort claimants to receive a portion.[16]

This Plan does not resolve all lawsuits by Michigan prisoners against Corizon and its former employee medical providers. The Plan resolves claims where: 1. The plaintiff is a creditor; 2. Corizon itself or its employees remain parties; and 3. the plaintiff did not opt out of Plan treatment. The undersigned have numerous cases where the plaintiff did not file a proof of claim and four cases (of the nine opt-out plaintiffs nationwide) where the plaintiff opted out. In all of those cases, the case has or shortly will return to normal litigation, including motion practice and trial. But this case is resolved by the Bankruptcy Plan. First, Plaintiff Dittmer filed a Proof of Claim as a creditor to the bankruptcy.[17] Second, Dr. Papendick is a former employee of Corizon, now known as Tehum. Third, Plaintiff did not opt-out of the Plan and can now pursue his claims through expedited payment or the PI/WD trust process in the bankruptcy proceeding. He likely is already doing so. But he cannot pursue his claims

---

[16] There are fresh allegations that YesCare is not paying into the trusts as required. There was a Notice of Default filed on January 26, 2026. Defendant Papendick does not have any information regarding whether this is true or what the consequences of this would be. There have been no responses or rulings related to this Notice as of the date of filing. Defendant Papendick will continue to monitor the docket and inform the Court of any updates in his Reply Brief.

[17] Plaintiff's name and Proof of Claim can also be found under the Creditor Search on the Verita website for the bankruptcy:
https://veritaglobal.net/tehum/creditor/search/result/2

against Defendant Papendick in federal court after the Effective Date. He has granted

Tehum and its former employees a Consensual Claimant Release and:

> "[E]xpressly conclusively, absolutely, unconditionally, irrevocably, and forever release[d] and discharge[d] **each Released Party of and from any and all Causes of Action based on or relating to, or in any manner arising from, in whole or in part, any act, omission, transaction, event or other circumstance taking place or existing on or before the Effective Date [March 31, 2025] in connection with or related to the Debtor**, the Estate, their respective current or former assets and properties, the Chapter 11 Case, the Plan of Divisional Merger, any Claim or Interest that is treated by the Plan, the business or contractual arrangements between the Debtor and any Released Party, the restructuring of any Claim or interest that is treated by the Plan before or during the Chapter 11 case, any of the Plan documents or any related agreements, instruments, and other documents created or entered into before or during the Chapter 11 Case or the negotiation, formulation, preparation or implementation thereof, the pursuit of Plan confirmation, the administration and implementation of the Plan, the solicitation of votes with respect to the Plan, the distribution of property under the Plan, or any other act or omission transaction, agreement, event or other occurrence taking place on or before the Effective Date related or relating to the foregoing[.]"
>
> (Exhibit 3, pg. 53)(emphasis modified)[18]

---

[18] See also:
Exhibit 3, pg. 7, Definitions of "Channeled Claim" and "Channeled PI/WD Claim"; and Id., pg. 55, "Protections Afforded to Released Parties."
Exhibit 4, Disclosure Statement in Solicitation Package, pg. 104, "Holders of Channeled PI/WD Claims shall be enjoined from prosecuting any outstanding of filing future claims against the Released Parties in any forum whatsoever, including any state, federal, or non-US Court." Also in Exhibit 3, pg. 29.

B.  <u>Defendant is a "Released Party"</u>

Defendant Papendick anticipates that Plaintiff may object to Defendant Papendick's status as a "Released Party," as that is the objection the undersigned has heard the most in other similar motions in other cases. The plain language of the Plan as well as the Plan's purpose say that Defendant is a Released Party. As already quoted, "Released Party" is a term defined in the Plan. (Exhibit 3, pg. 18, definition 175). The Debtor, now known as Tehum Care Services and formerly known as Corizon Health, Inc., is a Released Party. (Id.; Id., pg. 9, definition 51). Current and former employees of the Debtor are also Released Parties. (Id, pg. 18). The definition states that "Non-Released Parties" (definition 127) are not included, but there is no argument that "Entity co-liable with one or more Released Parties, including a Governmental Unit, on any claim" describes Dr. Papendick better than "former employee of Debtor." For example, an easily understandable Non-Released Party would be the MDOC or its employees, such as the MDOC defendants remaining in this case. None of the provisions provided from the Plan, Disclosure Statement, or Opt-Out Ballot exclude former employees of Tehum/Corizon such as Defendant Papendick. Further, the Bankruptcy Court confirmed in its August 2025 Order that former employees of Tehum/Corizon are Released Parties and are entitled to the same treatment as Tehum and other named Released parties. (Ex. 16, pg. 4). Dr.

Papendick is a Released Party and thus he is included in the Release and Channeling Injunction.

That former employees of Corizon are released makes sense when zooming out and understanding what this Plan is trying to do. The complex series of corporate transactions that led to Tehum's bankruptcy and the ultimate resolution are outlined in the Disclosure Statement, pages 5-17, but Defendant Papendick can briefly summarize. (See, Exhibit 4, pgs. 88-100). As a cost and obligation of doing prison medicine, Corizon Health, Inc. (the first one) was involved in many prisoner lawsuits across the country against it specifically or against its employees for allegations of medical malpractice, deliberate indifference, or other related claims. In states where it eventually lost the contracts (and thus income) for prison medicine, it continued to have actual or potential liability exposure. It decided that the best outcome was to split in two and put the liabilities, such as for defending and indemnifying Michigan (and Alabama, Arizona, Idaho, etc.) former employees, in Tehum and put the assets in CHS, T.X. YesCare, Corp later acquired CHS, TX. (Exhibit 4, page 90).

There are allegations, outlined in the Disclosure Statement and most prominently asserted by the Tort Claimants Committee in the bankruptcy, that this transaction and related maneuvers were fraudulent or otherwise in violation of law. YesCare and the various entities above and adjacent to it were willing to buy their peace and resolve all claims with Tehum with a $50 million contribution to fund two

trusts, including one for tort claimants. They wanted to close off allegations that YesCare or CHS, T.X. were liable for Tehum's tort liabilities on theories of successor or alter ego liability. This includes, importantly, closing off pass through liabilities for judgments and settlements by former employees of Tehum asserting the same theories of successor liability for Tehum's duty to indemnify them. However, they were legally required under 5th Circuit precedent and the Supreme Court's decision in *Harrington v. Purdue Pharma, L.P.*, 603 U.S. 204 (2024) to require consent for a release of claims. This is what the Plan did by providing an opt-out. If enough claimants opted out, YesCare had a right to withdraw and the Plan would fall apart. It did not do so and it has bought its peace by resolving the approximately 175 Class 6[19] and Class 8 claims leaving only the nine Class 7 claims. (Exhibit 5, pgs. 18-27).

     C.  <u>Plaintiff Opted Into the Plan</u>

Clearly, if a creditor claimant opts out of the Plan, the terms of the Plan have no relevance to that creditor's case. The creditor can return to litigation, even against Tehum itself. But equally clear is that the opt-out had to be affirmatively made by February 21, 2025. Affirmatively choosing to opt-in and not acting at all had the same effect: opting into the Plan, granting the Consensual Claimant Release, and enjoining continued litigation. Defendant Papendick has cited the many places where

---

[19] This number does not include the additional Class 6 claimants who, like Plaintiff, did not vote and are not listed in Exhibit 5.

this is clearly stated in the bankruptcy documents, including pg. 22 of the Plan,[20] but the best articulation is from the Opt-Out Form itself: "**If You do NOT affirmatively "Opt Out" of the Consensual Claimant Release by submitting this Opt-Out Release Form prior to the Voting Deadline**, the Consensual Claimant Release will bar you from initiating any Cause of Action against the Released Parties in the manner and to the extent spelled out in the Plan and/or order of the Bankruptcy Court, as may be applicable" (Exhibit 11, pg. 4) (emphasis in original). Plaintiff did not opt-out, therefore they have opted into the Plan as a Class 6 creditor. This has financial benefits for him but does mean he cannot continue this suit against Dr. Papendick.

### D. Plaintiff's arguments regarding "Personal Capacity" do not affect the terms of the Bankruptcy Plan

Plaintiff signaled in his portion of the Corrected Joint Status Report that he does not believe that the Plan's releases apply to Dr. Papendick because of a distinction between "official" and "personal" capacity claims. Plaintiff will likely brief his arguments in full in a Response, but his arguments and citations in the Status Report are not persuasive. The application of the Bankruptcy Plan is essentially a contractual matter: Did Plaintiff make an agreement and if so, what did he agree to?

---

[20] Exhibit 3, pg. 26.

Plaintiff appears to not dispute that he opted into the Plan, that he is entitled to participate in the PI/WD trust, and could not sue Corizon/Tehum. Therefore the terms of the Plan apply to him. As quoted above on pg. 17, the Consensual Claimant Release applies to any cause of action against a Released Party that is at all related to work for the Debtor Tehum. There is no dispute that Dr. Papendick was working for the debtor when he reviewed and denied Plaintiff's cataract surgery request. (See ECF No. 24, PageID.148, ¶5). The distinction between official and personal capacity suits does not make a difference to the Plan treatment. Plaintiff participated in the briefing on the YesCare bankruptcy motion[21] and Judge Lopez rejected his arguments and ruled that this claim—which only has Dr. Papendick, not Corizon/Tehum, as a party— is barred and should be dismissed.

## IV. RELIEF REQUESTED

Plaintiff Gordon Dittmer had the option as a creditor to the Tehum Care Services Bankruptcy plan to either opt into the published Plan's treatment of personal injury claimants and participate in the division of $25 million of trust money but forgo litigation against Released Parties, or opt-out and litigate their claims against them. Defendant Keith Papendick, MD is defined as a Released Party under the Plan. Plaintiff did not opt-out of the Plan and granted a release of his claims against Defendant

---

[21] Bankruptcy Dkt. Nos. 2159, 2252, 2275, 2346, 2368.

Papendick. This has been confirmed by the Bankruptcy Court. It is therefore appropriate that this Court dismiss his claims as released.

WHEREFORE, Defendant Keith Papendick, MD respectfully requests that this Court grant Defendant Papendick's Motion, dismiss the remaining claims against him with prejudice, and grant whatever other relief it deems appropriate.

Respectfully

**HACKNEY ODLUM & DARDAS**

Dated: January 30, 2026

By:_____

Thomas G. Hackney (P81283)
Connor A. McLaughlin (P83229)
Attorneys for Defendant Keith Papendick, MD
10850 E. Traverse Hwy. Ste. 4440
Traverse City, MI 49684
(231) 642-5026
thackney@hodlawyers.com
cmclaughlin@hodlawyers.com

## CERTIFICATE OF COMPLIANCE

I hereby certify that the attached *Brief in Support of Defendant Keith Papendick, MD's Motion for Summary Judgement* complies with the length limits of LCivR 7.2(b)(i). Defendant Papendick's brief, excluding the case caption, cover sheets, table of contents, table of authorities, signature block, attachments, exhibits, and affidavits, contains <u>4,291 words</u>, as counted by Microsoft Word, Version 2405.

Dated:  January 30, 2026               By: *Connor A. McLaughlin*
                                        Connor A. McLaughlin (P83229)
                                        Hackney Odlum & Dardas
                                        Attorneys for Defendant Papendick
                                        10850 E. Traverse Hwy., Ste. 4440
                                        Traverse City, MI  49684
                                        (231) 642.5026
                                        thackney@hodlawyers.com
                                        cmclaughlin@hodlawyers.com

## CERTIFICATE OF SERVICE (E-FILE)

I hereby certify that on the 30th day of January 2026, I electronically filed the attached *Defendant Keith Papendick, MD's Motion for Summary Judgement* and *Brief in Support,* together with this Certificate of Service, with the Clerk of the Court using the ECF system, and mailed a copy by first-class mail to Plaintiff at the following address:

Gordon Dittmer, #175464
In Pro Per
Lakeland Correctional Facility
141 First St
Coldwater, MI 49036

Dated:  January 30, 2026              By: *Connor A. McLaughlin*
                                      Connor A. McLaughlin (P83229)
                                      Hackney Odlum & Dardas
                                      Attorneys for Defendant Papendick